MCALISTER, ETC. *v.* MCALISTER

No. 43796 February 21, 1966 183 So. 2d 513

878

*Charles H. McCraine, Jr.,* Houston; *W. L. McDonough,* New Albany; *Scribner & Brewer,* Tupelo, for appellant.

*Daniel, Coker & Horton, Ruby B. Weeks,* Jackson, for appellee.

Brady, Tom P., J.

This is an appeal from a judgment of the Circuit Court of Tippah County, Mississippi, in favor of the appellee. From this judgment appellant prosecutes this appeal.

The record discloses the following pertinent facts. Appellant instituted suit against appellee for personal injuries sustained on December 4, 1958, at approximately 6:00 A. M., in a collision between a station wagon driven by the appellee, in which the appellant was a passenger, and a farm tractor driven by Dewitt Cook. Both the station wagon of appellee and the farm tractor driven by Dewitt Cook were traveling south on Highway 15 approximately three miles north of New Albany, Mississippi. Appellee's station wagon struck the farm tractor in the rear and appellant suffered serious injuries to his body and to his brain, the latter leaving him non compos mentis.

At the time of the accident, appellant and appellee, as was their custom, were on their way to work at a lumber yard in New Albany, Mississippi, which was owned by J. H. Tabb and Company, hereinafter called Tabb Company. It is the contention of appellee that he was a partner of Tabb Company, while appellant contends that the appellee was an employee in Tabb Company. The appellant first filed a workmen's compensation claim against Tabb Company, which claim was finally decided by this Court and is reported in J. H. Tabb & Company v. McAlister, 243 Miss. 271, 138 So. 2d 285 (1962). In that decision can be found a delineation of the basic facts involved herein. Appellant drew compensation benefits as a result of this accident and claim. Appellee likewise filed a workmen's compensation claim against Tabb Company and drew some compensation benefits.

The facts in the case at bar are prolix and largely controverted, and desirable brevity in treatment proves

to be difficult. Appellant claims that appellee was foreman, manager and time inspector of Tabb Company at its New Albany lumber yard. There was only one Tabb Company, and it was owned solely by Mr. J. H. Tabb of Houston, Mississippi.

At the trial of the workmen's compensation claim of appellant, appellee testified that he considered himself an employee of Tabb Company rather than a partner. The record discloses that Tabb Company paid social security taxes on appellee for a number of years and then decided that appellee would pay social security on a self-employed basis. When appellee reached the age of seventy-five and made application for social security benefits, it was then determined that appellee would have to be considered an employee if he was to receive social security benefits, and it became necessary for Tabb Company to make payments for social security on amounts earned by appellee during that time.

In the workmen's compensation hearing the attorney-referee found that James Hugh Tabb was the record owner and sole proprietor of J. H. Tabb and Company and that the appellee was manager of the New Albany, Mississippi, operations. The finding of the attorney-referee was affirmed by a majority vote of the Workmen's Compensation Commission. On appeal therefrom it was affirmed by the Circuit Court of Tippah County, and upon appeal to this Court the order of the attorney-referee was again affirmed in its entirety.

An appeal was taken from the order of the Workmen's Compensation Commission to the Circuit Court of Tippah County. In the circuit court the jury returned a verdict in favor of the appellee.

Six errors are assigned by the appellant and are as follows:

(1) The Circuit Court of Tippah County, Mississippi, erred in overruling Appellant's motion that Appellee be estopped from claiming to be a partner

in J. H. Tabb and Company and from introducing testimony to that effect.

(2) The Circuit Court of Tippah County, Mississippi, erred in permitting the Appellee to testify over the timely objection of Appellant.

(3) The Circuit Court of Tippah County, Mississippi, erred in allowing Instruction No. 8 for the Defendant to be given to the jury.

(4) The Circuit Court of Tippah County, Mississippi, erred in overruling Appellant's motion for a directed verdict.

(5) The verdict of the jury was contrary to law and to the overwhelming weight of the evidence.

(6) The verdict of the jury evinced such passion and prejudice on the part of the jury against the Appellant as would shock the conscience of an enlightened court.

The consideration of four of the errors assigned will dispose of this case.

In support of appellant's proposition number one, that the appellee should have been estopped from pleading and introducing testimony to the effect that appellee was a partner in Tabb Company, appellant relies heavily upon the fact that on October 20, 1960, before Attorney-Referee J. T. Hill of the Mississippi Workmen's Compensation Commission, in the matter of John Henry McAlister v. J. H. Tabb & Company and U. S. Fidelity & Guaranty Company, the appellee testified under oath that he considered himself an employee of Tabb Company and not a partner. Appellant cites as authority for this contention the case of Bracey v. Crisler, 151 Miss. 655, 118 So. 138 (1928). In that case one Sam Ella claimed to be the widow of Ned Bracey and entitled to insurance proceeds and the estate, as against the collateral heirs of Bracey. Sam Ella had testified as a witness in a previous suit which was brought against the heirs of Bracey by one Cindy Bracey, who was claim-

ing to be the widow of Bracey. In that previous suit Sam Ella had testified that she had lived with Bracey but had never been married to him. This Court held that because of Sam Ella's testimony in the previous suit, she was estopped from claiming to be the widow of Bracey in her suit.

Appellant contends that the rule in Bracey v. Crisler is controlling in the case at bar and that, since the appellant had by motion urged the trial court to rule that appellee was stopped from claiming to be a partner in Tabb Company, as appellant had set up in his pleadings, the appellee was estopped from claiming to be a partner and the trial court therefore erred in overruling appellant's motion. Appellant also points out that seven of appellee's fourteen instructions granted dealt with and were based upon the defense that appellee was a partner in Tabb Company and therefore relieved of any liability in a tort action by virtue of the fact that workmen's compensation benefits were secured by appellant.

If the contention of appellant is correct, then the trial court should have sustained appellant's motion that appellee be estopped from pleading, and denied appellee the right of introducing evidence to substantiate the claim of appellee that he was a partner in Tabb Company.

In determining whether or not the operation of estoppel was proper as urged by appellant, we cite the case of Day v. McCandless, 167 Miss. 832, 142 So. 486 (1932), which was an injunction proceeding. In that case we said:

Estoppel operates only in favor of one who, in reliance upon an act, representation, or silence of another, so changes his situation as that injury would result if the truth were shown. There must have been a representation or concealment of material facts. The representation must have been made with knowledge of the facts; the party to whom it was made must have

been ignorant of the truth of the matter; it must have been made with the intention that the other party should act upon it. The other party must have been induced to act upon it. . . . (167 Miss. at 840, 142 So. at 489.)

The burden of showing that the basic constituents of estoppel are present is upon the party who is urging the operation of estoppel. In the case at bar, the appellant wholly failed to show that the essential elements as set forth in Day v. McCandless are present here. The record does not disclose that appellant's situation was changed by appellee's opinion testimony given in the hearing before the Mississippi Workmen's Compensation Commission. The appellant has failed to show that he relied upon the testimony which was given and that it has operated to his detriment. Appellant's counsel in the trial of the case conceded that the question of determining a partnership is difficult, even for him. In the final determination of appellant's claim, as reflected in J. H. Tabb & Company v. McAlister, 243 Miss. 271, 138 So. 2d 285 (1962), we held as follows:

The attorney-referee was of the opinion, however, that it was not necessary for him to determine whether Judd T. McAlister was a partner, a coadventurer, or a working foreman; that transportation was made available to the employees by the employer-defendant through Mr. McAlister; and that it appeared from the authorities that, "where an employer provides free transportation for his employee, the employee is deemed to be on duty during transportation." (243 Miss. at 275, 138 So. 2d at 286.)

There is ample evidence in the record in the case we have here to support the finding of the attorney-referee that transportation was made available by the employer-defendant through Mr. Judd T. McAlister, the manager of the New Albany plant, for employees of the plant who lived in the Cotton Plant community. . . .

Judd T. McAlister, whether a copartner with J. H. Tabb, or an employee, was manager of the plant and the representative of the owner in the operation of the business. (243 Miss. at 277-78, 138 So. 2d at 287.)

It is apparent, therefore, that this Court did not adjudicate the status of appellee with J. H. Tabb, insofar as his being a partner or an employee is concerned, and any reliance by appellant on appellee's testimony at the original hearing was purely an optional one on the part of appellant and was a risk which appellant voluntarily chose to assume.

In Crowe v. Fotiades, 224 Miss. 422, 80 So. 2d 478 (1955), a proceeding to determine the ownership of mineral rights under certain lands, this Court defined again the requirements for the operation of estoppel. We said in that case:

The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation or concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence. . . . (224 Miss. at 443-44, 80 So. 2d at 486.)

In the hearing at which appellee stated he considered himself an employee, Mr. James H. Tabb was examined as to his opinion of appellee's status in the organization. For the determination of this question, it is necessary to consider the actual testimony of Mr. James Hugh Tabb, which is as follows:

A May I go into the history of our relationship in answering that question, and I don't think I could answer it with one word.

Q Yes, sir.

A Mr. McAlister and I agreed back in 1931 to handle some crossties and some lumber back in those

days and later on, a little pulp wood; that agreement was this, that I would furnish the money and do the selling and look after the sales, Mr. McAlister was to hire all labor and superintend the buying, the manufacturing, in case we engaged in any manufacturing, and the stacking and the loading of all of the materials and for that work he was to receive 50 per cent of the net profits of the enterprise. Now, if I may go on, it wasn't exactly clear in my mind what his status would be under such an arrangement. He did not own any interest in the general business. By the way, I have another man working with me under the same arrangements as Mr. McAlister and I worked under. For awhile the business was incorporated but he held no stock in the Company, the charter was later surrendered and business continued as J. H. Tabb & Company. We paid social security and income tax on Mr. McAlister for a number of years and later we decided mutually that he would pay social security on a self-employed basis, then when Mr. McAlister became 75 years of age he made his application to the Social Security Division for his social security payments. The hearings were long and decision delayed for quite awhile and the result of those hearings were that the Federal Government or the Social Security Division ruled that Mr. McAlister was an employee and then we had — the company had to go back and pay social security tax on him for a number of years. Now, I don't recall the exact time, I think Mr. McAlister had paid that tax himself for a year or so. My memory is that they never did refund what he had paid, so it is my opinion that it has been paid twice. Now, I'll come to the answer to your question, after the Government ruled that he would have to be regarded as an employee so far as the paying of social security tax was concerned, then of course I considered him as an employee.

On cross-examination Mr. Tabb testified as follows:

Q All right. Now, a moment ago you stated that your books reflected, at least for a period there, that Mr. McAlister was an employee, is that correct?

A Well, he — it shows that we have deducted social security tax from him just as we do from all of the other employees on the amount that was actually paid.

Q Yes, sir. Well, your attorney didn't advise you whether or not he was an employee or partner? In other words, you didn't have any expert advice on whether or not he was—

A The only expert advice I had on it was that of the Social Security Department — the Federal Government, they advised us very definitely that social security tax would have to be paid by J. H. Tabb & Company.

Q But up until that time you had felt that he was not an employee and was a partner?

A I didn't know exactly what — technically I wouldn't know — was just a general agreement we had, a verbal agreement and we both abided by it all through the years since 1931 on to his retirement and for awhile he paid social security tax on a self-employed basis.

Q Yes, sir.

A But still there was no change in the operation.

It is clear from the foregoing that appellant was fully acquainted with the true facts of appellee's relationship to Tabb Company and the circumstances which gave rise to appellee's testimony. It follows, therefore, that any reliance which appellant may have placed in appellee's testimony was done so with full comprehension of the admitted confusion as to appellee's status, and it is obvious also that it was not because appellant was ignorant of any material facts relating to the status of appellee with Tabb Company.

In Harris v. American Motorist Insurance Company, 240 Miss. 262, 126 So. 2d 870 (1961), in discussing the question of the claim of estoppel, we said:

In the case of Crooker v. Hollingsworth, 210 Miss. 636, 46 So. 2d 541, 544, 50 So. 2d 355, this Court has pointed out that in the case of Meyerkort v. Warrington, Miss., 19 So. 2d 433, it was said: "* * * in the absence of *extremely persuasive circumstances,* courts will not give effect to an estoppel where the parties are equally well informed as to the essential facts, or where the means of knowledge were equally open to them. 19 Am. Jur., p. 742; 31 C.J.S., Estoppel, § 71, p. 272, and cases under note 98. . . ." (240 Miss. at 274, 126 So. 2d at 875.) (Emphasis ours.)

The parties in the case at bar were certainly equally well informed as to the essential facts on the issue of whether or not appellee was an employee or a partner with J. H. Tabb.

The record in this cause does not disclose any *extremely persuasive circumstances.* No effect because of this factor can be given appellee's claim of estoppel for the reason that the parties were equally well informed as to the essential facts, or they had the means of knowledge which were equally open to both of them.

In Gullett v. Best Shell Homes, Inc. of Tennessee, 312 F. 2d 58 (5th Cir. 1963), which was based upon a personal injury action in which plaintiff sought to hold defendant liable on the grounds that the alleged tort feasor was its servant, the United States District Court for the Northern District of Mississippi dismissed the complaint. The complainant appealed, and the Fifth Circuit Court of Appeals found the following pertinent facts:

Appellant argues that Burlison, a licensed electrician, was Best's servant at the time of the accident. Three general contentions are made: . . . (3) that Best is "estopped" to deny that Burlison was an "employee"

at the time of the accident because Best's workmen's compensation insurer paid Burlison compensation benefits for injuries sustained in the accident giving rise to this action.

Appellee contends that the findings of fact of the court below are not clearly erroneous and that estoppel has no place in this case, inasmuch as, inter alia, the injured party did not, to his detriment, rely upon the position taken by Best or its compensation insurer. Appellee relies on the finding by the court below, moreover, that the compensation benefits to Burlison were paid as the result of a mistake of fact. (312 F. 2d at 60.)

Appellant's contention that Best is now "estopped" to deny that Burlison was a servant on the basis of the payment of compensation benefits to Burlison for injuries received in this accident, was properly rejected by the court below. In addition to that court's conclusion that the elements of estoppel were not present, it is apparent that, at most, all that was involved in this evidence was a possible admission on Best's part. The report to the Workmen's Compensation Commission by Best's office employee that Burlison was an "employee" would seem to be a conclusion of law on that employee's part, which was admissible evidence for consideration by the court in its determination as to how the parties construed the relationship.

In dealing with this situation, the court below recognized that one may be a "statutory employee" for workmen's compensation purposes and not be a common-law servant for other purposes. . . . (312 F. 2d at 61.)

In support of the finding that there was an absence of the elements of estoppel, in a footnote the Court quoted Crowe v. Fotiades, *supra,* and cited Harris v. American Motorist Insurance Company, *supra,* and continued:

It is evident that even if it be assumed that there were some false representations of fact or facts on the part of Best, the appellant did not rely on such actions and could not have been prejudiced thereby. The appellant in this action was not in any manner affected by the relations between Burlison, Best and the compensation insurer. (312 F. 2d at 61 n. 2.)

The elements of estoppel listed in Crowe v. Fotiades, *supra,* are still in effect in this state, as is shown in the case of Wagner v. Mounger, 253 Miss. 83, 175 So. 2d 145 (Miss. 1965), which was a suit seeking cancellation of an oil and gas lease for failure to timely pay delay rentals or to commence drilling operations. From an order canceling the lease, defendants appealed, raising the issue of estoppel, and we said in that case:

In the case of Crowe v. Fotiades, 224 Miss. 422, 443, 80 So. 2d 478, 486 (1955), we held:

''The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation as concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence.''

. . . The appellee did not intentionally relinquish or waive any right as he did not have knowledge of the facts, and since he did not have this knowledge personally or through his agent, there could be no intent that the acts of his agent in accepting delay rental payments were to be relied upon by either Waggoner or Wagner, as both were fully informed as to the true facts and terms of the lease both as to the authority granted and that limited or withheld. Under the facts and circumstances as reflected by the record here we are of the opinion and so hold that the lessor was not

estopped to decline the fourth payment of delay rental. (175 So. 2d at 149.)

We hold, therefore, that there was no estoppel which arose from the appellee's testimony in the hearing on appellant's claim for compensation benefits. The said testimony is obviously and merely an opinion of his status and we fail to see where it damaged appellant or led him astray. Further testimony at the same hearing fully apprised appellant of all of the material facts relating to appellee's relationship with J. H. Tabb, and this Court pretermitted any adjudication of that question. Appellant was not in any manner affected by the relations between appellee and Tabb; he did not rely on the subject testimony to his detriment and could not have been prejudiced thereby. We hold, therefore, that the elements of estoppel are not present in this case; that the lower court properly overruled appellant's motion to admit appellee's pleadings and testimony, and granted instructions on his affirmative defense with reference to the alleged partnership in Tabb Company. Because of these facts, we hold that there is no merit in appellant's first proposition.

We consider next the second error assigned, which is that the court erred in permitting appellee to testify over timely objection of appellant. Appellant urges that both the letter and the spirit of Mississippi Code Annotated section 1690 (1956) were violated when appellee was allowed to testify as a witness and that this ruling constituted reversible error. Section 1690 provides as follows:

A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. . . . Nor shall a person testify as a witness to establish his own or assigned claim or defense against the estate of a per-

son of unsound mind, which originated before the ward became a non compos mentis. . . .

In Poole v. McCarty, 240 Miss. 341, 127 So. 2d 398 (1961), this Court, speaking through present Chief Justice Ethridge, succinctly outlined the basic purposes of this section, as follows:

Although some general statements in various decisions tend to support appellee's all-inclusive interpretation of Sec. 1690, this fact illustrates the need to keep in sight the purposes of the statute and the controlling facts in the decisions pertaining to it. Note, 6 Miss. L. J. 409 (1934); 2 Wigmore, Evidence (3d Ed., 1940), Sec. 578.

In Shepherd v. Johnston, 1947, 201 Miss. 99, 106, 28 So. 2d 661, 663, these rules of construction of the statute were stated: "Section 1690, Code 1942, prohibiting a person from testifying as a witness to establish his own claim against the estate of a deceased person, created an exception to the general rule as to the competency of a witness; and being an exception, it must be strictly construed in favor of the competency of the witness. The exception must come within both the letter and spirit of the statute. . . ." (240 Miss. at 346, 127 So. 2d at 400.)

. . . In the instant case, both parties to the transaction are living and can testify. Hence the protected area of the statute does not exist. Its object is equality and the prevention of false swearing. The surviving party should not have the benefit of his own testimony where the adversary's lips are closed by death. 58 Am. Jur., Witnesses, Sec. 215. The object is to prevent the living from testifying against the dead, in order to prevent injustice where there is no one to dispute or refute such testimony. 97 C. J. S. Witnesses §132b; Hawkins v. Rye, supra.

Accordingly, the statute was obviously not intended to apply to a suit between the two living persons to

a contract who are both available to testify. . . . (240 Miss. at 347-48, 127 So. 2d at 401.)

In summary, the exclusion of Poole's proffered testimony would not promote any purpose intended by the statute. Being an exception to the general rule as to competency of witnesses, it must be strictly construed in favor of competency. . . . He was not disqualified as a witness under Code Sec. 1690. (240 Miss. at 350, 127 So. 2d at 402.)

■■■ This ruling clearly indicates that the purpose of section 1690 is not nullified or breached by the admission of appellee's testimony after appellant was permitted to testify in his own behalf. Appellant urges that, since the witness was not sworn, the testimony is of no value and therefore, in substance, the appellant did not actually testify. We cannot agree with this conclusion because while the jury could observe the plaintiff in the courtroom if he was in the courtroom, and the record does not indicate that he was, nevertheless when the witness formally takes the stand, sworn or unsworn, he commends himself and his testimony to the jury for their scrutiny and evaluation. The jury heard this witness attempt to answer the questions propounded to him, heard the mumblings and expressions of this witness as he endeavored to answer the questions, and the appellant obtained any desired benefit therefrom. It is true, as appellant urges, that this witness was, for the most part, an exhibit, but we cannot say that at the time he was testifying his presence in the witness box and his testimony did not have profound influence upon the jury. This Court has declined to hold that the immunity and privilege which a statute affords a claimant can be partially waived. When waived, it is waived in toto.

In Manning v. Hammond, 234 Miss. 299, 106 So. 2d 51 (1958), we held:

It has been well established by the decisions of this Court that a party against whom a claim is asserted

waives incompetency by introducing and examining the claimant as a witness. Birchett v. Hundermark, 145 Miss. 683, 110 So. 237; Waldauer v. Parker, 141 Miss. 617, 106 So. 881; Fant v. Fant, 173 Miss. 472, 162 So. 159. We think that the chancellor was clearly in error in sustaining the objection to the testimony of these witnesses insofar as it pertained to transactions which transpired during the lifetime of the deceased and in excluding the testimony.

In the case of Birchett v. Hundermark, supra (145 Miss. 683, 110 So. 238) the Court, considering this statute, said: ''Moreover, the prohibition of the statute is for the protection of a party against whom a claim against the estate of a decedent is or may be asserted, may be waived by him, and is waived as to a particular witness having such a claim when he himself introduces and examines the witness.''

In the case of Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, 741, 62 So. 432, 51 L.R.A., N.S., 187, the Court said: ''The policy of the statute is to close the mouth of the living because death has sealed the lips of the dead.'' In the case at bar, the representatives of the estate waived the right to have the lips of the living sealed. . . . (234 Miss. at 307, 106 So. 2d at 56.)

In 58 American Jurisprudence *Witnesses* section 357 (1948), we find the following statement:

It is frequently provided in effect that the prohibition of the statute shall not extend to a transaction or communication with a deceased or incompetent person as to which any protected person is examined on his own behalf, or as to which the testimony of the deceased or incompetent person shall be given in evidence.

In Coney v. Coney, 249 Miss. 561, 163 So. 2d 692 (1964), which was a suit to establish claims to realty, the lower court dismissed the action on the ground that the children of decedent were allowed to testify in defense of

their deeds. In affirming the dismissal of this action on these grounds, we said:

Appellant's contention that the court erred in permitting appellees, Allen, Albert and Lonnie Coney to testify to establish their defense against the estate of the deceased "Coney Brothers", Van, John L. and James Coney is based upon § 1690, Miss. Code 1942, the pertinent part of which is as follows: "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. ***"

We are of the opinion, however, that the appellants cannot raise an objection based upon the foregoing code section for the reason that they offered two brothers of the deceased M. M. Coney to prove the claim of the "Coney Brothers" against the alleged trust estate said to have been wrongfully transferred by M. M. Coney to his sons.

The rule appears to be well-established that the examination of one witness incompetent under the dead man's statute operates as a waiver of incompetency of adverse witnesses, at least where the testimony of such adverse witness is offered after the examination of the first witness, and as to matters testified to by such first witness. Baker v. Baker, 363 Mo. 318, 251 S. W. 2d 31, 33 A. L. R. 2d 1431; Anno. 33 A. L. R. 2d 1441. (249 Miss. at 573, 163 So. 2d at 697-98.)

In the Baker case we said as follows:

We think like reasoning applies to the disqualification of a witness under the "Dead Man's Statute," § 491.010, supra, and such was the stated view of the court in Fowler v. Sone, Mo. App., 226 S.W. 995, 996 (8). To prevent the statutory disqualification from becoming an instrument of injustice, we have held that, if a party waives said disqualification of a wit-

ness, he waives it for all purposes — "he may not limit his waiver." (363 Mo. Rep. at 323, 251 S. W. 2d at 34.)

The general rule, which appears sound to us, that the plaintiffs cannot open the door and close it again at will, has application here. The appellant opened the door, and once the door is opened it remains open; the appellant by testifying waived the incompetency of appellee's testimony. See Miss. Code Ann. § 1690 (1956).

 The third error assigned is that the granting of appellee's instruction No. 8 constituted reversible error. Instruction No. 8 reads as follows:

The Court instructs the jury for the defendant, Judd T. McAlister, that in determining whether the defendant was a partner of James H. Tabb, the relationship is to be determined as of the time the agreement was entered into. You are further instructed, that an agreement of partnership need not be in writing, but may be oral, and that it is largely a question of the intention of the parties at that time. You are instructed that in determining the question, you may consider the actions of the parties after the making of the agreement was made. You are further instructed that in making your determination as to whether a partnership, in fact, existed, that the fact that the defendant was to share both the profits, losses and expenses of the operation in New Albany creates a presumption of partnership, but that even so, these facts must be considered along with the other evidence in the case.

That portion of the instruction which appellant specifically assigns as error is as follows:

You are further instructed that in making your determination as to whether a partnership, in fact, existed, that the fact that the defendant was to share both the profits, losses and expenses of the operation in New Albany creates a presumption of partnership,

but that even so, these facts must be considered along with the other evidence in the case.

Appellant contends that this portion of the instruction complained of did not require the jury to find that the appellee was to share both the profits, losses and expenses of the operation before a presumption of partnership would exist. Appellant urges that this portion of the instruction peremptorily told the jury that the appellee was to share profits, losses and expenses of the operation and *that a presumption of partnership did exist.*

Appellant further urges that the question of whether appellee was to share in any losses of Tabb Company was a question in issue and was for the jury to decide. In support thereof appellant points out that in the stipulation of the testimony of Mr. J. H. Tabb, Mr. Tabb stated that he did not recall whether it was agreed thirty years ago, when they began operations, that appellee would share in any losses. Appellant also points out that at one time the appellee testified that he was to make up his share of any losses out of future profits, and that later appellee testified that there never were any actual losses. Appellee contends that the instruction was not erroneous because the testimony is uncontroverted that appellee and Mr. J. H. Tabb were operating under an agreement whereby they shared equally in the losses of the business and that appellant raises no question of proof relating to sharing of profits and expenses. Insofar as profits and expenses are concerned, the record is free from material conflict. There are, however, factual issues with reference to whether or not the appellee was to share the losses and if appellee actually ever sustained any losses, the record indicating, according to appellee's own testimony, that he never directly paid out of pocket any losses incurred; that the agreed way he was to sustain and pay any losses was by his overall net income being reduced thereby. Appellee testified as follows:

Q Now, if there were any losses, how were they to be taken care of?

A It went back the other way.

Q What do you mean by "went back the other way"?

A Well, Mr. Tabb went back into the kitty.

We agree that appellee's instruction No. 8 is confusing and erroneous, for the reason that there is conflicting testimony as to the appellee's actually being required to share the losses of the partnership. Appellee's contention that the testimony is uncontroverted that he shared in the losses is not borne out by the record. We are faced, therefore, with the subsequent question of whether the error is fatal or is harmless. We are forced to conclude that the jury was not misled by it and it is therefore harmless. All instructions requested by appellant relating to the question of whether appellee was a partner or an employee were granted. In fact, only the peremptory instruction requested by the appellant was denied. The appellant obtained an instruction stating to the jury that, unless the appellee proved by a preponderance of the evidence that he was a partner in J. H. Tabb & Company, they should return a verdict for the appellant.

Appellee obtained instruction No. 9, which is as follows:

The Court instructs the jury for the Defendant, Judd T. McAlister, that a partnership is created under the law when two or more persons, with the intention of creating such partnership enter into an agreement, express or implied, whereby they place their money, effects, labor, skill or experience in lawful commerce or business agreeing to divide the profits or bear the losses, if any, in certain proportions, and you are further instructed that it is not necessary to the creation of such partnership that one of the parties may furnish all the money with the other or others to fur-

nish skill, experience and labor, receiving his share of the profits as profits and not as wages for employment.

This instruction correctly set out what facts are essential to establish a partnership.

Appellee next obtained instruction No. 10, which is as follows:

The Court instructs the jury for the defendant, Judd T. McAlister, that if you believe from a preponderance of the evidence that the Defendant and J. H. Tabb entered into an agreement, express or implied, under which the said J. H. Tabb would put up the necessary capital to manufacture cross-ties, lumber and other products at New Albany, Miss., and would market such products, and this defendant was to handle the manufacturing of such product, contributing his time, experience labor and skill, with this defendant to share in the profits and losses, not as compensation as an employee, but acting in his own behalf and receiving such profits as the owner thereof, and if from all the evidence you believe the parties intended to form a partnership for the conduct of said enterprise, then it is your sworn duty to return a verdict for the defendant.

It is clear that this instruction left completely up to the jury to determine under the facts if the appellee did enter into a partnership with J. H. Tabb. It left solely to the jury to decide if the appellee was to share in the profits and losses not as compensation as an employee, but acting in his own behalf and receiving such profits as the owner thereof.

Reading all the instructions together, we cannot hold that the jury was misled by instruction No. 8, which concludes with the admonition "that even so, these facts must be considered along with the other evidence in the case."

We conclude that, construing all the instructions together, the error in instruction No. 8 is harmless.

· ■ ■ The dominant issue in this cause is whether the appellee was a partner of J. H. Tabb. As appellant urges, it is an issue of fact rather than of law. It is to be conceded that there are some conflicts in the testimony of these two witnesses. The conflicts relate to the legal effect of their agreement which started their business relationship some thirty years ago, and to the procedures, regulations and adjustments which occurred in their subsequent operations. The conflicts relate also to their adjudication of whether the appellee was a partner or an employee of J. H. Tabb. Appellant's workmen's compensation claim precipitated much of this conflicting testimony. The record discloses that a thorough factual presentation was made to the jury, even though the appellee and J. H. Tabb admitted that they had at times been confused over appellee's true legal status with J. H. Tabb, as revealed in appellant's workmen's compensation claim and appellee's application for social security upon reaching seventy years of age.

The evidence is sufficient to permit the jury to determine that the appellee was in fact operating a partnership with J. H. Tabb under an agreement outlining the contributions of each partner and the distribution of the net profits to each as partners or principals. The proof is ample for the jury to find that the appellee was a joint owner of the partnership property with full rights of management, with the right and obligation to share equally in the profits, expenses and losses of the partnership.

The jury having determined that appellee was a partner with J. H. Tabb, we will not disturb their finding. It follows that the circuit court did not err in overruling appellant's motion for a directed verdict and errors five and six do not require consideration.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

*Gillespie, P. J., and Rodgers, Inzer and Smith, JJ.,* concur.